Thank you, Your Honor. May it please the Court, Douglas July on behalf of Petitioner, the only issue in this case is whether cooking under threat of death for a terrorist organization rises to the level of material support of terrorism under 8 U.S.C. 1182. There is no Ninth Circuit case on point that addresses this factual issue. We have basically three cases that I think offer some guidance and some help. And then we have a board decision, I believe, out of the Second Circuit that is on point that addresses at least cooking in addition to cleaning and some other household chores or tasks. So I'll just, because the case law in the Ninth Circuit is so limited, I'll just go down the list here one by one. We have Haile, H-A-I-L-E. Maybe cut to the chase and give us your best argument for why cooking should not count as material. Understood, Your Honor. I'll cut straight to the argument and avoid my distinguishings from these other three cases that are published from the Ninth. Basically, I think my first argument is that the statute is unambiguous. I think it's very straightforward. Affords material support including a safe house, transportation, communications, funds, transfer of funds, or other material financial benefit, false documentation, identification, weapons, including chemical, biological, radiological weapons, explosives, or training. So in the unambiguous part of the argument, I'll point the court to the third panel member's strong dissent in matter of ACM. I will quote from her decision. In the dissent, the dissenting opinion in ACM is simply going to say that the statute is ambiguous. So it was disagreeing on the question of ambiguity, but even if the statute is deemed to be ambiguous, we would still then rely on the judgment or look to the judgment of the agency, correct? The agency says cooking qualifies. There you have the ACM case. Well, the court should give Chevron deference to ACM if this court deems that the statute is ambiguous. Yes, that's correct. And in that, I'll jump to my second argument at the court's inquiry, which is even if it's ambiguous and Chevron deference is accorded to ACM, ACM is clearly contrary to the plain meaning of the statute. And that's basically, and again, I'll quote from the dissent on a different section, which is all of these examples, like the majority's application of the bar to the minimal and menial activities in which the respondent has engaged, essentially read the word material out of the statute and render it superfluous, an outcome which I cannot agree with. So if the statute's ambiguous, if the court is according Chevron deference to ACM, the court has to look at the word material. And I challenge the panel to consider what type of support would not be considered material. Counsel, I want to interject a question to make sure you cover an issue of concern to me at some point in your argument. My understanding is that the circuit has very unfavorable precedent on de minimis support as to what's de minimis in the sense that if you give $50 to a terrorist organization, that's not going to be considered de minimis. And also has precedent saying that there's no implied duress exception. What bothers me about this case, about denial of relief in this case, so this is on your side of the case, is that it seems like if someone cooks food under duress, that if they won't do it, they're going to be killed. Which Al-Shabaab would be capable of doing. Why we can have material support without any kind of mens rea. And so I wondered if I'm, am I really bound by circuit precedent on duress? And do I have to just take my dissenting point of view to an in-bank panel or the Supreme Court? I appreciate the court's inquiry and focusing my efforts. We've got, all of that case law, your honor, involves facts which are completely distinguishable from this case. So we have highly, this is my first argument, we have highly which involves passing of secret documents, collecting funds, supplying provisions. The petitioner in this case wasn't throwing the food and giving it to the Al-Shabaab. She was under threat of death. And she's not passing secret documents like in Haile. In Anakamee, there was actually an exchange of funds, a monetary $37. Same with Riyamaji, paying $50 in funds. That is, funds is directly listed in the statute. And at best, cooking just does not fall within the statute on its face. I think that's my strongest argument. And even if, I mean, the very minimum catch-all would be other material financial benefit. But in Riyamaji, it states the inclusion in the list of the phrase, quote, other material financial benefit. Grammatically, that phrase relates only to transfer of funds and suggests that funds are material per se. Because a person affords material support by transferring some funds or some other material financial benefit, some liquidity, some fungible asset. And that's not what petitioner did here. So I think if we have, if the court finds that it's unambiguous, I direct the court to, and I don't, Riyamaji did not decide if the statute is ambiguous or not ambiguous. It just didn't. It says, it decided that if the statute is ambiguous, that they would not find de minimis exception to a transfer of funds. That's the key, is the factual distinguishing factor here. Because in all these cases, there was behavior from those petitioners that fell directly within the list, the statutory list. Funds, communications, transfer of funds, transportation. My part of your response to Judge Gould be that once our court has taken away the de minimis option and the duress option, that the only way to give material meaning at this point is to say that some types of activities are not relevant to terrorism in the sense that needs to be for material. Because of the word material. And my proposal is, and I'll point to my brief at page 12 and 13. I give a simple economic hypothetical. And it's basically, it actually involves a duress type of argument. But it's not a duress exception. Because if you're giving funds under duress, yes, that's within the statute. But if you're doing something that's maybe less under an ambiguous statute, and you're doing it under duress, I think that duress comes into the analysis. I know that's maybe a little hard to follow. But I think you have to look at... Is there a way for your client to apply again for the duress exception? I understand that she was denied the USCIS exemption. But is there a way, is that final? Or is there a way to try again? What's the status of that? There's no appeal to that decision. I asked the government about mediation prior to this oral argument. And at this time, there wasn't any guidance. I don't think that she would fall within the priority memo. And I would be happy to entertain mediation. I mean, we did request it. Counsel, can I ask you another question? Just like a thought experiment or hypothetical. Let me understand this duress issue. During World War II, if my history knowledge is correct, the Nazi commanders would sometimes force Jewish inmates in concentration camps to do things that do work. Some kind like work on a chain gang to build a road. Would force them to play music. I think there was a movie about that at some point. And I know that the Japanese, after military conquest in the Philippines, forced the Philippine people to build a road for them. So in those kinds of situations, if we viewed the Nazis or the Japanese army in World War II, by analogy to being a terrorist group, would those people not be able to get aid of immigration relief in the U.S.? Because they gave material support. If the Nazis were deemed a terrorist organization, correct your honor. And I echo the court's concern. It's not an easy analysis here because we have these blocks, these 9th Circuit precedents that have thrown out the duress exception, that have thrown out the diminutiveness exception. And I agree. The court is bound by that precedent. And I agree that when – look at the facts of those cases. Those petitioners were giving funds, which is directly in the statute. They were passing secret documents, providing intel, doing these things that are material support to terrorism deemed by the court. And the court said when you're doing those things, there's no duress exception. There's no diminutiveness exception. And I'm saying that when you're doing something that's outside of the statute, that's not directly falls within it, duress comes into the analysis. And I'll point to my economic hypothetical that I – Before you get back to your economic hypothetical, is there any circuit that has found a duress exception? No, and I'm not asking the court for duress exception. I'm asking the court to recognize that the statute is not ambiguous and that under the principles of statutory construction in the ACM dissent, it is well-settled canon of statutory construction that general statutory terms should be understood to include the items belonging within the same class that is defined by the four specific terms in the list. So we have a list here, and the court can look at the list and view that as a class and recognize that cooking under threat of death has absolutely no place or business within this group. So I don't understand why you need the duress point to make that argument. It seems like you could just say all of the things listed in the statute are very relevant and directly supportive of terrorism, and cooking is not of that type, and so it doesn't count as material, period. Isn't that what – I had understood your argument to be more like that. That is – I don't – I mean, I want to avoid too much confusion, and yes, Your Honor, that is my strongest argument that the statute is unambiguous. If it is ambiguous, then you can't – then the court can't read the word material out of the statute just back to the ACM dissent. I challenge the panel to consider what type of support would not be material under the ACM decision. I've only got 30 seconds, so I'll yield that for my rebuttal. Thank you. Just in your 30 seconds, would you address the alternative holding in Ramadan? Because if you look at Judge Bennett's concurrence, it's a concurrence, not a dissent, and it says as to the court's articulation of the second alternative, which is even if it is ambiguous with respect to funds, there's a secondary holding. And so under Johnson, I don't see that we can simply disregard that secondary holding in Ramadan. I think – you know, I saw that myself, Your Honor, and I think that the concurrence seems to assume that the court made a decision on ambiguity, and I don't think the court made a decision on ambiguity. I think that for that reason, that the court is not bound by that concurrence. And in addition, the facts in Ra'imazji involved funds. Ra'imazji is – it's good for guidance on resolving ambiguity, but it's not a case on point. It would be ambiguity about whether there's a de minimis exception too, right, not about what the meaning of materiality is? Correct. That's correct, Your Honor. Yeah, that was alternative too, right. Thank you. And just for your planning purposes for petitioner, I know your time is up, but I'm going to give you two minutes of rebuttal. Thank you, Your Honor. Mr. Stone, I think we've given you lots of issues to talk about. Yes, Your Honor. Good morning. My name is Paul Stone. I represent the Respondent Attorney General of the United States. Because the parties no longer disagree that Ms. Noor cooked for Al-Shabaab over a number of months, the issue before the court is narrow, which is whether her cooking – She admitted that it was over two months in her testimony. I don't think I have the exact page number here. A number of times she did say over time, over a few months, it was a little inconsistent. It sounded like they had me cook, and then somehow there was an assumption that it was long, but maybe I missed some part of the testimony. I didn't actually find any specific amount of time. I'll try to identify that and identify it to the court later. I don't think that's a good use of time for me to look it up, but I do believe it was over two months and that she did testify to that at one point. So, you know, that's the first issue, which obviously is whether or not that's actually material support or is not de minimis. If it's not de minimis, then we don't need to get to the ACM question. But I know the panel spent a lot of time thinking about that, so I'll jump to the second issue, which is whether there is an exception for de minimis material support in the INA. And as the board explained in ACM, it followed the Boehm decision in the Seventh Circuit, which interpreted the Civil Materials Support Statute and essentially said the term material means not a quantity of evidence, but rather the quality of the evidence, meaning does it relate to the terrorist activities. The board explained, does the act have a logical and reasonably foreseeable tendency to promote, sustain, or maintain their organization, even to a de minimis degree? So the example the board said is one of the reasons it took the qualitative interpretation of the term material is because, for example, expressing general support for an organization wouldn't fall under that. And if it did, it would raise certain First Amendment or freedom of speech issues, although the First Amendment doesn't technically apply to aliens overseas, it's still an important policy issue. So is that your answer, that the only thing material excludes is cheering on an organization? Well, not necessarily, Your Honor. If the act doesn't have a tendency to promote, sustain, and maintain the organization, then it doesn't fall under material support. For example, the reason we think cooking falls under this is because, you know, cooking is a requirement for life. It's certainly a requirement for the terrorists to continue operating, which is why we believe it's material support. And also, if I could ask you a question, how would you respond to my Nazis forcing captives to build a road, if you view them as a terrorist group, is that material support? Your Honor, I believe it would be, but those folks would almost certainly be eligible for exemptions. The reason the exemption wasn't granted here, and I understand it's not before the court, so I'll keep it short, is because her testimony about what she actually did changed a lot. That's not really before the court, because she's now essentially conceded that she cooked for al-Shabaab, but she actually initially said she cooked, then she later in her testimony denied ever doing anything for al-Shabaab. She was inconsistent about a number of other things, which is ultimately why she didn't get the exemption. But those folks, as long as they came to this country and told the truth about what happened, would certainly be eligible for an exemption by the CIS. I'd also like to point out that the post-war Nazi persecutor bars that made people who assisted in persecution under the Nazi regime ineligible for residency here did not have a duress exception. The famous Federico case made clear that there is no duress exemption. Somebody had claimed that they were forced to guard prisoners under duress, and the court said that's just not relevant under this bar. So this court has always regarded that sort of thing—I'm sorry, not the court, Congress in this country—has always regarded human rights violations very seriously with very little exception. Congress has created the material support for terrorism bars. Admittedly, they're extraordinarily broad. Many courts have pointed that out, including this one. McAllister in the Third Circuit explains it very well. But Congress understood that, and later Congress enacted this exemption provision as an outlet. So, for example, there are exemptions for duress, which is why this court in Anacomie agreed that there is no duress exception to the material support bar. CIS also created an exemption for assistance given under—de minimis assistance given to undesignated terrorist organizations. So there are exemptions available for both types of assistance. Here, she was considered for assistance given under duress because it was a designated terrorist organization, a Tier 1 organization, which is regarded most strictly under the laws. That's one that the Secretary of State must designate. There are criminal sanctions attached to even American citizens who provide material support to those types of organizations. In the analysis of materiality, is it appropriate to look at whether if the cooking, for example, had not been provided, it would have been taken resources away from the terrorist organization, had to do their own cooking or cleaning or other? I mean, certainly that's one of the relevant considerations. I believe the Bowen Court may have pointed out, or may have been another Seventh Circuit decision, that by providing other types of assistance to terrorist organizations, it frees up the members of that organization for other ends. So, for example, if a gun-carrying member of al-Shabaab had been assigned to do the cooking, and by her coming in, he then could go out and take part in terrorist activities, that absolutely shows why it's material. But here, what's going to be important about that hypothetical becomes the burden of proof, which is ultimately the applicant has the burden to show that the mandatory bars don't apply. So the applicant is going to need to provide some proof that actually it didn't make any difference to the organization at all. There wasn't a terrorist who was doing it before. They were eating granola bars and they were just fine. That me coming in and cooking really was just a luxury and really did not help the organization in any way. We don't have anything like that in the record that petitioners offered. The Sixth Circuit in Hosseini v. Nielsen said that material support means important and relevant in advancing terrorism. Under that standard, if we agreed with them, would cooking count? I think, again, it would have to count because preparing food, this is a necessity for life, which is a necessity for doing day-to-day activities. But for this group, it was a necessity for them to engage in terrorist activities. If they don't have food, they don't have nutrition, they can't engage in terrorist activities. Why didn't the statute list cooking? Because the statute doesn't list all types of material support. Those are just exemplars. Does it list anything similar to cooking in your view? A safe house is fairly similar because we think in terms of going someplace and getting room and board. Well, a safe house, part of that could include board, which is food, as well as a place to sleep, which under petitioners' argument, providing a place to sleep may not be material support, even though it's a necessity for life. But we would certainly argue that room and board comes under the prenumbra of a safe house. It's not just a place to plan things. It's a place to live for the terrorist organization. But the standard, we believe, is set out in ACM, which we believe is entitled to deference under Chevron Step 2, which is actually whether the act, if the act has a logical and reasonably foreseeable tendency to promote, sustain, or maintain the organization, even if to a de minimis degree. And we believe Re-Imagi supports that. The two-judge majority did rest its decision on the plain language. They held that because funds was included in the plain language of the statute, that any amount of funds necessarily was material support. The two-judge majority did go on to say, but we also believe deference is appropriate to ACM under Chevron Step 2. It did not hinge that part of the holding on the fact that it was money or funds, and it was listed in the statute. And the concurrence agreed with that as well. So it's a peculiar case where we have the majority decision based on one thing, but actually all of the judges agree on the second thing, which is that ACM is entitled to deference under Chevron Step 2. On the issue of what counts as de minimis, or whether de minimis is an exception at all, right? Correct. There was no occasion to talk about what other types of activities might be material because they were talking about one that was listed in the statute. You mean Re-Imagi? Yes. Yes, Re-Imagi was specifically about that one. ACM was not. ACM, actually, one of the activities was cooking. I understand that, but when our court talked about ACM, it was only talking about the part about de minimis. Yes, it focused on the part about de minimis, certainly. But that moves back to the first question, which is can cooking be material support at all, any amount of cooking? And we absolutely believe it can. Many courts have found that cooking, among other things, it provides material support. For example, St. Coward found cooking and putting up tents for religious meetings constitute material support. Any case that held cooking by itself is material support? I couldn't find one. No, but for example, in the St. Coward case, tents and cooking is not much more than just cooking. The Hernandez case, oh, well that's not true. The Hernandez case in the Second Circuit, it is unpublished, did find that providing food once every three months for two years, so about eight times. It did constitute material support. But again, Your Honor. Have there been attempts at mediation in this case? Yes, we did place, I can't remember if we placed it in mediation initially and then it was dismissed pending CIS's decision on the exemption. CIS eventually declined to grant the exemption for the reasons I said here. Opposing counsel did call me earlier this year, or contact me earlier this year, and at that time we didn't have guidance yet. But in the past, guidance has always accepted material support cases or national security cases from what we can exercise prosecutorial discretion on. And then when ICE came out with the guidance, I looked at it and again, it looks like these sorts of cases are exempted from eligibility and prosecutorial discretion. So we didn't think at this time there would be a lot served by putting the case in mediation. And I take it that remains the government's position that it wouldn't be fruitful to discuss mediation in this case? Yes, we believe at this point. We tried before and unfortunately it didn't work out with the exemption not happening. But at this point, I don't think it would be fruitful. If something does change, I'll inform the panel immediately, of course. But that's where we are right now. So I'll sum up because my time is almost up here. Essentially, our argument is that providing cooking and providing food for a terrorist organization over a number of months is not de minimis support. It is material support. It does help support and maintain that organization. But even if it were not, under ACM, any amount of support, there is no exception for de minimis material support, so long as that material support, logically, reasonably, and foreseeably, has a tendency to promote, sustain, or maintain the organization. So we urge the court to deny the petition for review. Thank you. I have one question for you. It's of a factual nature. And I realize I may be the only one on the Zoom call. Judges and advocates included tried to march down the duress trail when the duress trails were closed by precedent. And I do want to know, was there any factual finding on credibility by the agency indicating that she was not forced in any way to cook? There was no factual finding on that here, Your Honor, or on credibility. The immigration judge found her credible on her testimony that she was subject to female genital mutilation, so there's no dispute about that. The immigration judge went on to say he had questions about her other claims, but it's not necessary to reach a credibility decision on that point, because he found that she was eligible for asylum on FGM by itself. So there's not a credibility finding, an explicit credibility finding in this case. But the judge did find her earlier claim that she cooked for al-Shabaab more credible than her later claim that she did not. Thank you, counsel. I appreciate your indulging me on that issue for the day. Not at all. Thank you, Your Honor. So, Mr. Jalali, we're giving you some extra time if you want to make rebuttals. Very briefly, Your Honor. Thank you. My first point is about qualitative or quantitative. You can't read material out of the statute. It's required, and again, I cite to the bottom of page 314 of APM. That judge cites dole foods. Declining to construe a statute in a manner that is strained and at the same time would render a statutory term superfluous. So again, what would not be material basically reads the term out of the statute. It's just not fair under the canons of statutory construction. The IJA decision and the BIA decision both do not say the extent of cooking. And I will footnote two of the board's decision. And I will also point out that the petitioner in this case did not provide food. Did not provide food. The opposing counsel's argument states that she cooked and provided food. That's wrong. He cooked food. He heated it up. Or whatever, cooking the food. She did not bring the food. I think that's an important distinction here. Only cooking. That's the only fact here. And lastly, on credibility, the judge stated that he would have granted asylum and withholding was it not for the material support bar. That's a credibility finding. She's found credible by the agency below. Based on that, I rest. I think this is a novel issue, and I really thank all of the judges for your time. Thank you. Before we submit this case, I just want to say I want to thank both Mr. July and Mr. Stone for their excellent advocacy on behalf of their clients. And especially for doing this in the middle of a pandemic, which poses some hazards for anyone who steps outside of their home. So we do appreciate it. And this case shall now be submitted and the parties will hear from us in due course.
judges: Gould, Friedland, Ericksen